UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BRAND SERVICES, LLC, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action |
| | ) | File No. |
| versus | ) | |
| | ) | Judge |
| IREX CORPORATION, | ) | |
| | ) | Magistrate Judge |
| Defendant. | ) | |
| | ) | |

**VERIFIED COMPLAINT AND APPLICATION FOR A TEMPORARY
RESTRAINING ORDER, TURN-OVER ORDER, PRELIMINARY
INJUNCTION, FOR DAMAGES AND REQUEST FOR EXPEDITED
DISCOVERY**

**<u>Introduction</u>**

COMES NOW Plaintiff, Brand Services, LLC ("Brand"), in the above-styled action and represents that this action relates to the presence of Brand's misappropriated, confidential, proprietary and/or trade secret information ("Brand's Protected Information") wrongfully placed on electronic equipment owned and held by its competitor, the defendant, Irex Corporation ("Defendant" or "Irex"), and Irex's threat to revert the equipment into the Irex organization, and its apparent threat to delete all data, including evidence of disclosure, access and/or dissemination of said Brand's Protected Information, from Irex's equipment; and Brand alleges as follows:

**<u>Nature of the Action</u>**

1.      This is an action for injunctive relief and damages premised on Brand's claims

under the Louisiana Uniform Trade Secrets Act ("LUTSA") and for conversion.

## Parties and Jurisdiction

2.        Brand Services, L.L.C., Plaintiff, is a Delaware corporation with its principal place of business in Georgia and registered to do business in the State of Louisiana.

3.        Defendant Irex is a Pennsylvania corporation (*see* Pennsylvania Secretary of State website, Exhibit A) with its principal place of business in Pennsylvania (*see* Irex website, attached as Exhibit B).   The amount in controversy exceeds $75,000.00 exclusive of interests and costs.

4.        Jurisdiction and Venue are proper in this court because:

   a.        This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332 in that there is complete diversity of citizenship between Brand and Irex and the amount in controversy exceeds $75,000, exclusive of interest and costs.   Brand's Protected Information, which is the subject hereof, includes proprietary software programs containing highly confidential, valuable details of Brand's contracts with customers, including rates, pricing, job site needs and contract execution, which would be of tremendous benefit to Brand competitors and would damage Brand in competitors' hands. *See* Declaration of Jason Fisher, Exhibit C at ¶ 9. The programs additionally have stand-alone, inherent value; for example, Brand paid a substantial sum to obtain ownership of one subject program, Scaffold Tracker, as part of an acquisition, and over $300,000 was invested in moving the currently used Scaffold Tracker program (the "Legacy" program) to a more widely used operating system (the "APEX" or "Redevelopment" project). *Id.* at ¶¶ 10, 14.  Moreover, acquiring the foundation for the advanced version of Scaffold Tracker (or protected information related to

2

any of the other proprietary programs at issue) would create tremendous advantage to Irex or any competitor and substantial losses to Brand.

    b.      The actions giving rise to Brand's claims took place in or near Jefferson Parish, Louisiana. *See* Stanich answers to Interrogatories, attached as Ex. D.

### Facts

5.      James Stanich ("Stanich") was an information technology ("IT") specialist who worked for Brand under a Confidentiality, Non-Competition, Non-Solicitation, and Invention Assignment Agreement (the "Agreement") as well as under various other policies protecting Brand's proprietary, confidential, and trade secret information. Stanich had special expertise in and access to, *inter alia*, certain confidential, proprietary and trade secret programs and associated information used by Brand in its scaffold business.

6.      Stanich voluntarily separated from Brand's employment on June 30, 2015, to work for Brand's competitor, Defendant herein, Irex, in violation of the Agreement.

7.      Upon information and belief, Irex was aware of said Agreement.

8.      A forensic examination of Stanich's Brand-issued laptop revealed that, before leaving, he transferred files and folders having substantial amounts of valuable, Brand Protected Information to external electronic "locations," including to a 2 terabyte external hard drive, as well as to other external devices and possibly to a web- or cloud-based storage account.

9.      Stanich did not return the information or provide the devices (or storage locations) to Brand upon his separation, as he was required to do by Agreement, by Brand policies, and despite being reminded of his obligation to do so.

10.     When Stanich left Brand's employment, he wrongfully took and retained electronic and paper copies of Brand's Protected Information and materials, including electronic equipment belonging to Brand.  *See* Stanich Answer to Interrogatory No. 5, Exhibit D.

11.     Further, Stanich deleted and "wiped"[1] large amounts of information from his Brand laptop, in an evident attempt to prevent the discovery of his actions.

12.     When Stanich became employed by Irex, he was placed in a substantially similar position to the job he held with Brand.  *See* Stanich Answer to Interrogatory No. 1 and Declarations of Chris Bean, attached as Exhibits D and E, respectively.

13.     Based upon information subsequently learned, it is a near certainty that Stanich placed Brand Protected Information on electronic equipment he received from Irex in connection with his new employment with Irex (the "Stanich-Irex Equipment"). *See* Frisbie Declaration dated 10-27-2015, at p.7, ¶ 2f.  attached as Exhibit F.

14.     On August 11, 2015, Brand filed a Verified Complaint and Application for an *Ex Parte* Temporary Restraining Order, *Ex Parte* Seizure Order, Preliminary Injunction, for Damages, and Request for Expedited Discovery against Stanich (the "Stanich Complaint"), claiming that Stanich violated the Computer Fraud and Abuse Act ("CFAA"), violated the terms of his Agreement with Brand, violated the Louisiana Uniform Trade Secrets Act ("LUTSA"), and converted Brand property, and requesting, *inter alia*, pursuant to the CFAA and LUTSA that Stanich and anyone acting in concert (or participation) with him surrender any electronic devices that had been used by Stanich since March 2015, and to make those devices available for forensic examination by

---

[1] "Wiping" is a term used to describe a specific deletion activity that overwrites deleted files with patterns of characters including zeroes or Z's so that the deleted files are harder or impossible to recover.

Brand so that Brand could discover the extent of what Protected Information was misappropriated and what happened to it. *See*, the Stanich Complaint attached as Exhibit G, (Brand Services, LLC v. James Stanich, 2015-cv-03401, Rec. Doc. 1).

15.     On August 12, 2015, in the aforesaid lawsuit, the U.S. District Court for the Eastern District of Louisiana issued a Temporary Restraining Order ("TRO") against Stanich ("Stanich TRO") finding as follows:

> 3.     Plaintiff is substantially likely to prevail on the merits of most of its claims because there is good cause to believe that Defendant James Stanich ("Defendant")
>
> a.     Has violated the CFAA through unauthorized access to a Brand computer;
>
> b. Has breached and continues to breach his contractual obligations to Brand under his Confidentiality, Non-Competition, Non-Solicitation, and Invention Assignment Agreement (the "Agreement") which require him
>
> i.     To not make personal use of or disclose Brand's Trade Secret or Confidential Information or proprietary information, but rather to protect and maintain its confidentiality (Agreement §1),
>
> ii.     To not keep items which contain or constitute Confidential Information or Trade Secrets, but rather immediately upon his separation from employment to surrender to Brand all items which contain or constitute Confidential Information or Trade Secrets (Agreement §2),
>
> iii.     To not take actions in contravention of Brand's ownership rights in the Subject Ideas and Inventions as described in the Agreement (Agreement §7);
>
> c. Has violated and continues to violate the LUTSA by misappropriating Brand trade secrets; and
>
> d. Has wrongfully converted Brand property.
>
> …
>
> **5.**     Imminent and continuing irreparable injury to Brand appears likely to result if the Court denies the requested injunctive relief: that Stanich comply with his obligations, and protect and restore Brand's property. There is no adequate remedy at law, including because **there appear to be uncontrolled electronic copies of Brand's confidential, proprietary and/or trade secret information at large and unaccounted for** due to Stanich's unauthorized removal of same from Brand's possession, custody and control. **This harm is exacerbated by Stanich's apparent current competition with Brand**, **and because Stanich appears to have**

**demonstrated a willingness and ability to destroy and impair Brand's information and evidence of his actions.**

6.  The harm to Plaintiff if the requested injunctive relief were denied appears greater than the harm to Defendant if the injunctive relief is granted, including because **without the requested relief Defendant and, through him, Plaintiff's competitor and possibly others, apparently would have continued wrongful, unrestricted access to substantial amounts of Brand's confidential, proprietary and trade secret information, the full extent of which Plaintiff will not even be able to determine without the grant of the requested relief.**

7.  Granting the requested relief will not disserve the public interest, which is benefitted by enforcing the law and protecting legitimate property, trade secret and business interests.

8.  Based on Defendant's past practices, there is good reason to believe that **absent the requested order, immediate and irreparable damage to this Court's ability to grant effective final relief will result from the transfer, destruction or other concealment by Defendant of Plaintiff's property and/or of evidence relating to its disposition or use**.

9.  The *ex parte* request for this Order is warranted by the **actual and material threat of immediate, irreparable injury** present in this case if Defendant receives advance notice of the Order, shown by Defendant's **<u>apparent ability and willingness to destroy computer files and evidence.</u>**

*See* Stanich TRO, attached as Exhibit H, pp. 1-4 (Brand Services, LLC v. James Stanich, 2015-cv-03401, Rec. Doc. 4) (emphasis added).

16.  The TRO ordered Stanich and anyone acting in concert with him (and, by operation of law anyone in participation with him [Fed.R.Civ.Pro. 65(D)(2)(C)]) requiring, *inter alia,* the surrender of any electronic devices that had been used by Stanich since March 1, 2015, and that the devices be preserved and made available for forensic examination by Brand so that Brand could discover the extent of what Protected Information was misappropriated and what happened to it.  In addition to defining "Confidential Information" and "'Trade Secret," the TRO went on to order that

> Defendant and anyone acting in concert with him **immediately surrender and return to Brand Services, LLC "all items which contain or constitute Confidential Information or Trade Secrets** as

6

well as all originals and all copies of all manuals, memoranda, notes, records, files and other documents obtained by Manager during his or her employment with the Company which relate in any way to the Company, its businesses and operations, and its customers and suppliers" (Section 2 of the Agreement).

**IT IS FURTHER ORDERED** that Defendant and anyone acting in concert with him **preserve for future forensic examination any and all hard drives, personal computers, and electronic devices owned or used by Defendant since March 1, 2015.**

**IT IS FURTHER ORDERED** that Defendant and anyone acting in concert with him **take all reasonable steps to recover, protect, and preserve any information in his possession that relates to Brand or its confidential information and trade secret**s.

**IT IS FURTHER ORDERED** that Defendant and anyone acting in concert with him **cooperate with Brand in securing, and determining the extent of the misappropriation of, Brand's property, and take all appropriate and reasonable steps to restore and recover Brand's confidential and proprietary business and trade secret information and to ensure that Brand's confidential information is not disclosed.**

**IT IS FURTHER ORDERED** that Defendant and anyone acting in concert with him is **strictly enjoined and restrained from directly or indirectly misappropriating, utilizing, disclosing, transferring, destroying, altering, impairing, or concealing activity involving, any of information relating to Brand**, including its confidential, proprietary and/or trade secret information.

*Id.* pp. 4-5 (Rec. Doc. 4) (emphasis added).

17.     On August 17, 2015, a status conference was held by the Court to facilitate the

physical handover of the electronic devices Stanich had used since March 1, 2015 to

Brand.  *See* Stanich Rec. Doc. 9, attached as Exhibit I.  The devices included Stanich's

personal equipment, and two devices that had been provided to him in connection with

his new job at Irex, a laptop and an iPhone (the "Stanich-Irex Equipment").

18.     Pursuant to the Stanich TRO, Stanich turned over his personal electronic

equipment to Brand for forensic review.  Irex was represented by counsel at the August

17, 2015 status conference.  *Id.*

7

19.     Brand relied in good faith on Irex's purporting to comply with the Stanich TRO upon injecting itself into the turn-over process, agreeing to properly retain the Stanich-Irex Equipment and coordinate, through its expert, with Brand's expert for the forensic review the Stanich TRO required; and premised on that good faith reliance, Brand agreed to jointly develop with Irex a protocol protecting confidential information on the Stanich-Irex Equipment.

20.     Pursuant to said agreement, the Stanich-Irex Equipment was transmitted to an Irex–retained expert to engage in the Court-ordered forensic review under a protocol in coordination with Brand's expert.

21.     Subsequently, Stanich and Brand agreed to convert the Stanich TRO into a preliminary injunction which remains in force to this date, continuing the protections of the Brand Protected Information and the associated investigation, including the forensic review. *See* Stanich, Rec. Doc. 19, attached as Exhibit J.

22.     Pursuant to the Court's order that a protective order be entered, Stanich, Brand <u>and Irex</u> agreed to and signed a Consent Protective Order Concerning Confidential Information  ("Protective Order") on September 4, 2015, which, *inter alia*, required a forensic examination of Stanich's personal equipment and the Stanich-Irex Equipment, and that it be performed according to the specific protocols therefor included in the Protective Order; required that Brand's Protected Information on the Stanich-Irex Equipment be preserved;  acknowledged that the forensic review which the signatories had bound themselves to conduct and which was entered as an order of the court was pursuant to the TRO and Preliminary Injunction; stated that "[t]he purpose of the search is to identify whether or not Brand information is present on the devices and if so, what

activity may have been taken as regards that information;" and expressly directed that the Protective Order "will survive the conclusion of this action." *See* Protective Order, generally attached as Exhibit K, generally and ¶ 20 and Ex. B thereto, ¶§ IV(A)(1).

23.     Stanich, Brand and Irex, including through the experts, moved forward under the Protective Order into the forensic examination process pursuant to the protocols, while contentious discovery proceeded between Stanich and Brand on the issue of Stanich's breach of his noncompetition agreement, which at the time was the subject of a preliminary injunction hearing.

24.     In reliance on, *inter alia*, Irex's conduct in purporting to honor the TRO/Preliminary Injunction, and in purporting to honor the Protective Order it signed containing the survival provision, Brand agreed to accept on a continuing basis the injunctive relief under CFAA and LUTSA it had sought in the lawsuit, in exchange for dismissal of the damages claims against Stanich.

25.     Accordingly, Stanich and Brand agreed to the conversion of the TRO/Preliminary Injunction into a permanent injunction with its requirements continuing into the future, and entry of a preliminary injunction requiring Stanich to comply with the terms of his noncompetition agreement for its duration, both injunctions to be subject to the continuing jurisdiction of the Court.  See Settlement Agreement, including agreed-upon permanent injunction and redlined comparison of the latter to the Preliminary Injunction, attached hereto as Exhibit L.

26.     Thus, each of the directives of the TRO/Preliminary Injunction continue in the agreed permanent injunction, including its provision for the preservation and protection of Brand's Protected Information and any information relating thereto, prohibition of

destruction or concealment of activity related thereto, cooperation in determining the extent of the misappropriation, and continuation of the preservation of equipment for forensic examination, which would include the Stanich-Irex Equipment.  See Settlement Agreement, including agreed-upon permanent injunction and redlined comparison of the latter to the Preliminary Injunction, attached hereto as Exhibit  L.

27.        No sooner had the parties executed the Settlement Agreement than Brand received the attached letter from Irex threatening that, since the case against Stanich was concluded, it would be instructing its expert to discontinue the forensic examination of the Stanich-Irex equipment, which would be returned to Irex, and giving Brand the option of receiving certification that "all electronically stored information is removed from those devices." See Exhibit M-2, attached with associated correspondence.

28.        After an exchange of communications with Irex advising of Brand's emphatic opposition to Irex's proposal, and providing reasons for said rejection, and further notice to Irex of Irex's preservation obligations, Irex was not dissuaded and maintains its position .  *Id.*

29.        Brand additionally reiterated that it considers Irex under a preservation obligation not only by virtue of its relationship the Stanich lawsuit, but also by virtue of its independent obligation to preserve documents and electronically stored information that may be relevant to imminent future litigation.

30.        Irex, including its threat to stop the forensic examination (which evidently has been done), wipe the Stanich-Irex laptop of all electronically stored information (or possibly alternatively not do so) and revert the equipment to Irex (*See* Exhibit M-2), has reiterated in writing no fewer than six times its belief that it is not bound by the Court's

orders and that it otherwise has no preservation obligations concerning the Stanich-Irex Equipment and the materials thereon.  *Id.*

## BRAND'S PROTECTED INFORMATION INCLUDES
## VALUABLE TRADE SECRETS

31.     Brand is engaged in the commercial scaffolding business, among other things. *See* Bean Declaration at ¶2, Exhibit E.

32.     Stanich became employed by Brand Services, LLC beginning in 2013, when Brand acquired a division of Harsco Corporation ("Harsco"). *See* Fisher Declaration at ¶¶4, 8 Exhibit C.  Stanich announced his resignation from Brand on June 15, 2015 and ended his employment with Brand on June 30, 2015.  *Id.* at ¶15.

33.     While employed by Harsco, Stanich was instrumental in developing a computer program called Scaffold Tracker, which manages customer contracts to increase efficiency and quality in providing scaffolding services. *Id.* at ¶¶8-9.  Brand obtained the ownership of Scaffold Tracker in connection with the Harsco acquisition, and has continued to use Scaffold Tracker.  *Id.* at ¶¶10-11.

34.     In connection with Stanich's performance of his job duties for Brand, Stanich was given access to Brand's confidential business and trade secret information, including but not limited to access to Brand's proprietary software developed for use in connection with its scaffolding services, including Scaffold Tracker.  *Id.* at ¶15.

35.     Scaffold Tracker is a valuable program: the software application enables end users to input job-specific data (labor, materials, *etc*.) for the purpose of tracking labor and inventory as well as enabling Brand through data collection, output and reporting, to pay its employees, invoice customers and track job productivity.  In addition to the program's having inherent value, it also houses highly confidential, valuable details of

11

Brand's contracts with customers, including rates, pricing, job site needs and contract execution.  This information would be of tremendous benefit to Brand competitors and would damage Brand if it were in competitors' hands.  *Id.* at ¶9.

36.     Brand paid a substantial sum to obtain ownership of Scaffold Tracker as part of the Harsco acquisition.  Moreover, over $300,000 was invested in moving the currently used Scaffold Tracker program (the "Legacy" program) to a more widely used operating system (the "APEX" or "Redevelopment" project).  *Id.* at ¶14.

37.     Brand derives substantial economic value from Scaffold Tracker and makes reasonable efforts to maintain its secrecy. These efforts include the mandatory execution of confidentiality and intellectual property agreements, the use of passwords and restricted access to data, among other things.  *Id.* at ¶¶14, 16.

38.     Additionally, Stanich was part of the PACE team in the Project Controls group, which required him to become a subject matter expert for certain productivity tools which included the internally developed, proprietary programs ProField, X-Tool, and New Labor Billing  in addition to Scaffold Tracker.  These programs perform similar functions as do Scaffold Tracker, and contain similar data.  ProField is the most widely used of these applications, and services the largest group of Brand's ongoing scaffolding projects for various customers.  By the time of his separation, his expertise level was such that he was training end users on the program.  *Id.* at ¶¶12, 13.

39.     On February 26, 2014, Stanich executed a Confidentiality, Non-Competition, Non-Solicitation, and Invention Assignment Agreement ("Agreement") in consideration for Stanich's employment by Brand.  Among other things, the Agreement required Stanich to: 1) hold Brand's confidential, proprietary information and trade secrets,

including Scaffold Tracker, in the strictest confidence, returning all originals and copies to Brand upon the termination of his employment; 2) not accept employment by any competitor of Brand in the restricted geographical area, including Jefferson and East Baton Rouge parishes, for a period of one year following the termination of his employment with Brand; 3) assign all rights, including ownership rights, to any inventions or software developed by him in connection with his employment to Brand; and 4) confirm Brand ownership of intellectual property developed in connection with employment by Brand. *See* the Agreement, Exhibit N.

### THE STANICH-IREX EQUIPMENT CONTAINS BRAND'S PROTECTED INFORMATION

40.     The preliminary review by Brand's expert of the Brand laptop Stanich used when he was employed by Brand indicated that a substantial amount of Brand Protected Information had been transferred off of it, including the transfer of highly sensitive data. *See* Declaration of Andrew Frisbie dated 08-09-2015, Exhibit O.

41.     The computer was sent to a team of forensic experts to perform an initial assessment of whether any data had been stolen from the computer. *See* Declaration of Rod Broschinsky at ¶5, Exhibit P.

42.     The computer forensic expert's preliminary review of Stanich's computer indicated that on June 16, 2015 (the day after Stanich announced his resignation) and June 30, 2015 (Stanich's last day), Stanich's work computer had been connected to two different high-capacity external hard drives and a large number of files and folders had been created on/copied to removable storage media, including external hard drives. *See* Andrew Frisbie Declaration dated 08-09-2015, Exhibit O. The forensic experts followed up with a comprehensive report further detailing their findings:

13

a.      47 files and folders were created on/copied to a 2 terabyte removable storage device bearing serial number 74B7-6DCC. Frisbie Dec. P. 17, ¶ b.  There were also 69 instances in which the "jstanich" user accessed files and folders on this device, the last of which occurred on June 26, 2015, which was four days before his final day with Brand.  *Id.* P. 19, ¶ d.

b.      In total, 130 files and folders were created on/copied to removable storage media prior to June 23, 2015.  *Id*. at P. 19, ¶ c.

c.      There are potentially artifacts that would show the transfer of Brand information onto a second 2 terabyte external storage device bearing serial number 575834314136344845354a on June 30, 2015, but the expert's investigation was limited due to the apparent deletion activity ("wiping" of Stanich's computer") that Stanich accomplished on June 30, 2015, his last day of employment with Brand.  *Id.* at P. 19, ¶4.

43.      Brand representatives reviewed the names of those files and folders and confirmed that files and/or folders of the same or similar names maintained on Brand's computers and/or servers contained Brand's confidential and proprietary information, including the program Scaffold Tracker, the Scaffold Tracker installer, and Scaffold Tracker marketing materials, and/or that the file and folder names otherwise reflected an association with valuable, protected, confidential, proprietary, trade secret Brand information and property.  *See* Fisher Dec. at ¶18; Bean Dec. at ¶22. In particular:

a.      Two designs of Scaffold Tracker were copied to removable storage media attached to the Stanich Computer:  the currently used Scaffold Tracker program

(the "Legacy" program) and the incomplete version of the Scaffold Tracker upgrade ("APEX" or "Redevelopment" project). Frisbie Dec. at P. 21, ¶ b.

b.      Stanich kept a copy of Scaffold Tracker source code on his laptop. The source code was comprised of over 3,000 files. There are 55 references to Scaffold Tracker on external devices dating most recently to June 26, 2015—just four days before Stanich's departure from Brand. *Id.* at P. 26, ¶ ii.

c.      A file called "credentials.xlsx" was created on the removable storage device bearing serial number 74B7-6DCC. *Id.* at ¶ c. Brand's CIO Fisher believes this file may contain passwords for different Brand applications. *Id.*

d.      Files were created on/copied to the same external device that reference ProField, another internally developed, proprietary program belonging to Brand. *Id.* at ¶ d.

44.      Subsequently, the forensic review of Stanich's personal equipment pursuant to the TRO/Preliminary Injunction and the Protective Order has been stonewalled by Stanich as of this writing. *See* Declaration of Andrew Frisbie dated 10-27-2015, Exhibit F, and Supplemental Declaration of Andrew Frisbie dated 10-30-2015, Exhibit Q.

45.      Nonetheless, while his review is not able to be in depth at this time, Brand's expert has been able to determine that Brand Protected Information is on Stanich's personal devices. *See* Declaration of Andrew Frisbie dated 10-27-2015, Exhibit F, P. 8-15.

46.      At the same time, Irex has stopped the forensic process on the Stanich-Irex equipment. Brand's expert has nonetheless been able to determine that it is a near-certainty that Brand Protected Information is on the Stanich-Irex equipment. *Id.* at 7.

47.     In response to Irex's stated concerns that its own protected information was contained on the Stanich-Irex equipment, the parties and Irex consented to the entry of a Protective Order, setting forth the protocols by which Irex's expert would search the Stanich-Irex equipment for Brand's protected information.  *See* Exhibit K.

48.     Under the protocols agreed to by Irex and Brand, Irex's expert took possession of the Stanich-Irex equipment to search for Brand information contained on those devices based on an agreed set of keywords/phrases specific to Brand's Protected Information (for example the keyword "ScaffoldTracker").  *Id.*  If a file or folder on the Stanich-Irex equipment contained the keyword/phrase, it would produce a "responsive hit." *Id.*  Some of the keywords (for example the keyword "ScaffoldTracker" which is the name of proprietary software owned by Brand to be exclusively used by Brand) would be highly unlikely to produce a "responsive hit" unless Brand's Protected Information was contained on the Stanich-Irex equipment.

49.     According to the protocol agreed to by Irex and Brand, after running the keyword/phrase search of the Stanich-Irex equipment, Irex was to review the "responsive hits" to ensure those files and folders do not contain Irex's own confidential or privileged information and then produce the "responsive hits" to Brand. Exhibit K, P. 17.

50.     Irex has not yet turned over any list of responsive hits, and effectively has terminated its participation in the process, contrary to the directives of the Protective Order and the permanent injunction, which prohibits activities by parties acting in concert with Stanich (such as Irex).

51.      The protocol allows for the modification of the keywords/phrases for the purpose of improving the search process. *See* Exhibit K, *See also*, Andrew Frisbee Declaration, Exhibit F.

52.      On September 23, 2015 Brand's forensic expert, Andrew Frisbie, was contacted by Irex's forensic expert, Michael Richmond, because a number of keyword searches had either produced too large a number of responsive hits or were not specific enough to be effective. (See Richmond Email dated 9-23-2015, Exhibit R).

53.      Pursuant to the protocol, Brand and Irex's experts arranged a call to refine the list of keywords/phrases. *See* Andrew Frisbee Declaration, Exhibit F.  During the call, the experts conducted a "screen share" session during which they ran a test search on the Stanich-Irex Equipment using the original list of keywords/phrases, reviewed the number of responsive hits, and attempted to find ways to refine the keywords/phrases in an effort to reduce the number of hits without increasing risk of Brand's information going undetected on the Stanich-Irex devices.  *Id*. at P.6, ¶ 2 b.  The test generated a "hit count" per keyword/phrase which both experts observed; the test results and hit count did not reveal the substance, content, or nature of the preliminary "hits" nor did the experts delve any further into the "hits."  *Id.* at P.6, ¶ 2 b.

54.      Brand's expert observed that the initial "hit count" returned multiple thousands of hits for many of the keywords/phrases. *Id.*  Additionally, Brand's expert observed numerous "hits" for nearly all of the keywords/phrases, including those specific to Brand's Scaffold Tracker software.  *Id.* at P.6, ¶ 2 c.

55.      Brand then supplied a revised list of keywords/phrases to Irex's expert to attempt to narrow the number of responsive hits.  *Id.* at P.7, ¶ 2 d.

56.     After Irex's expert conducted searches based on the refined list, he notified Brand's expert that there were still approximately 15,000 "hits."  *Id.* at P.7, ¶ 2 e; *see also* 10/15/2015 email from Michael Richmond to Andrew Frisbee, Exhibit S.

57.     Brand's expert indicates that based upon his observations during the "screen share" session and the number of hits reported from the refined keyword/phrase search, ***there is near certainty that the Stanich-Irex computer contains Brand's Protected Information***. Exhibit F. at P.7, ¶ 2 f.

58.     Brand has still not received a production of the retrieved information from Irex despite repeated offers to Irex to assist in identifying potential filters to further reduce the responsive hits requiring confidentiality and privilege review by Irex.  *Id.* at P.7, ¶ 2 g-h.

59.     It is a near-certainty that Irex is in possession of Brand's protected information. The information that would confirm this fact is within the knowledge and possession of Irex and not of Brand.

60.     This action is not a wild goose chase; Brand's forensic examination of Stanich's Brand work computer revealed that he had downloaded and taken several **terabytes** worth of Brand's most confidential information.   This information included the proprietary computer program Scaffold Tracker and the other files and information referenced above.  Brand takes conscientious steps to protect the confidentiality of this information including requiring employees who use it to sign non-disclosure and non-compete agreements, requiring passwords on Brand personnel computers, and restricting use to certain Brand personnel with a need to know the information.

61.     Based on the preliminary and incomplete forensic examination of the Stanich-Irex equipment, it appears likely that much of the information Stanich took from Brand was

transferred or loaded onto Stanich's Irex work computer.  Although the forensic examination had not yet reached the issue of the extent to which Brand's information was further transferred from the Stanich-Irex equipment to other Irex machines or even its server before Irex discontinued the process, it stands to reason that such activity also likely occurred.

62.     The "screen share" session observed by Brand's expert, paired with Irex's admission that the refined keyword/phrase search produced 15,000 "responsive hits," compounded by Irex's insistence on stopping the forensic examination of the Stanich-Irex equipment and its threats to return the laptop in to the Irex organization and delete the contents of the  equipment strongly indicate culpability on the part of Irex.  See, *Tuchman v. DSC Comms.*, 14 F.3d 1061, 1068 (A complaint containing allegations based on information and believe are appropriate when 1) the information is within the knowledge of the defendant and not the plaintiff, or 2) the belief is based on factual information that makes the inference of culpability possible).

63.     Upon information and belief, the total destruction of the information regarding the actual scope of the misappropriation of Brand's Protected Information and what happened to it is imminent as Irex has repeatedly expressed its intention to delete all of the data contained on the Stanich-Irex equipment.

64.     Moreover, if Irex chooses not to wipe the Stanich-Irex equipment and returns it to Irex to be recirculated into use as indicated, Irex will then have full access to Brand's misappropriated Protected Information to use as it will, to the extent that it has not or is not doing that already.

65.     Brand will suffer irreparable injury if Irex deletes the data contained in the Stanich-Irex equipment.  Without that information, Brand will never know the extent of the misappropriation of its Protected Information and the extent of its damages including loss of the inherent value of the trade secrets/software it spent considerable time and money developing, lost profits, lost business, loss of competitive advantage, and any unjust enrichment that Irex may gain from the possession of its trade secrets.

66.     In this action, Brand asks the court for an immediate order directed to Irex and anyone acting in concert or participation with it, as follows (generally described here but more specifically described *infra*):

a.  to preserve all Brand property and all evidence of its use, transmission, treatment, disclosure and disposition;

b.  to make subject to forensic analysis the Stanich-Irex Equipment under the same protocol applicable to that equipment in the above-referenced Protective Order, as modified by the addition of certain terms governing timing and consequences, and to require compliance with same;

c.  to prohibit any further use, transmission, treatment, disclosure or disposition of Brand property other than to preserve it or restore it as stated herein;

d.  to provide for discovery on issues related to the scope, treatment and/or potential exposure of Brand property; and

e.  to restore all Brand property to Brand including by providing to Brand all things where Brand information or vestiges of or links or pointers to any Brand property exist.

Brand additionally seeks all other available legal and equitable remedies.

20

**COUNT I**

**BRAND IS ENTITLED TO INJUNCTIVE RELIEF AND DAMAGES
UNDER THE LOUISIANA UNIFORM TRADE SECRETS ACT**

67.      Brand adopts by reference and incorporates all previous allegations as if fully set forth herein.

68.      LUTSA provides that "actual or threatened misappropriation may be enjoined…the injunction may be continued for an additional period of time in order to eliminate commercial advantage that otherwise would be derived from the misappropriation." La R.S. §51:1433.

69.      LUTSA further provides "a complainant may recover damages for the actual loss caused by misappropriation [of trade secrets]. A complainant may also recover for the unjust enrichment caused by misappropriation that is not taken into account when computing damages for actual loss."  La R.S. §51:1432.

70.      Brand derives substantial economic value from its trade secrets, including the program Scaffold Tracker and its similar programs, has spent considerable resources developing same, and derives independent economic value by virtue of its trade secrets not being readily ascertainable to its competitors, including Irex.

71.      Through, *inter alia*, the nondisclosure provisions and other restrictive covenants of Stanich's and other employee's employment agreements as well as the other protective measures addressed above, Brand made reasonable efforts to protect its confidential information from its competitors and others, such that they are protected trade secrets.

72.      As shown above, it is a near-certainty that Irex has acquired Brand's trade secrets and that such information presently resides on equipment owned by Irex.  Moreover, Irex is on actual notice that the trade secrets were acquired by improper means (namely,

through Stanich's misappropriation of the trade secrets in connection with his resignation from Brand). *See* Declaration of Andrew Frisbee, Exhibit F, *See* Matthew Williamson correspondence, Exhibit M, *See* Minute Entry on August 17, 2015 Status Conference, Exhibit I.

73.     Upon information and belief, Irex's acquisition of *inter alia* Brand's proprietary software, including Scaffold Tracker, caused damage to Brand in lost profits, lost opportunities, loss of competitive advantage because that program houses highly confidential, valuable details of Brand's contracts with customers, including rates, pricing, job site needs, and contract execution which would be of tremendous value to Irex, and in the loss of the inherent value of Brand's trade secrets and software, including Scaffold Tracker, that it spent considerable time and money developing. *See* Declaration of Jason Fisher signed August 3, 2015, Exhibit C at ¶¶ 9-14.

74.     Plaintiff seeks damages, injunctive relief as shown below and any other legal or equitable relief that this Court deems proper.

## COUNT II

## IREX HAS CONVERTED BRAND'S PROPERTY

75.     Brand adopts and realleges and incorporates all allegations as set forth herein.

76.     To prevail in a claim for conversion, the Plaintiff must show that the Defendant did any of the following: possessed Defendant's property without permission, moved Defendant's property with the intent to exercise control over it, without the Defendant's permission, altered or destroyed Defendant's property, or used the property improperly.

77.     Irex, *vis a vis* its employee Stanich, has wrongfully taken and retained possession of property owned by Brand and has wrongfully failed to return such property to Brand.

Moreover, Irex now asserts full control over said property, has acted to withdraw it from Brand's reach via the agreed Protective Order , the injunctive orders or otherwise, and threatens to further move it and otherwise use it improperly by handling it inconsistently with the Protective Order (by deleting it, eliminating the opportunity to determine the full scope of misappropriation or by making it available to its competitor and possibly others, to the extent not already done).

78.     Brand has suffered actual damages in an amount not yet determined as a result of Irex's conduct. Brand is entitled to recover from Stanich the full amount of these sums once they are determined.

79.     Brand is further entitled to any other remedy available by law or equity.

80.     Brand has been damaged as a result of the conversion of its property by Irex. Further, the conversion of its property subjects Brand to a pending and ongoing threat of immediate irreparable harm which will continue unless an injunction issues mandating the return of Brand's property and the opportunity to ascertain the full extent of the data theft suffered by Brand.

## CRITERIA FOR A TEMPORARY RESTRAINING ORDER

81. Injunctive relief should be granted if: 1) there is an imminent risk that Plaintiff will suffer irreparable injury; 2) no adequate remedy is available at law; 3) the Plaintiff demonstrates a likelihood of success on the merits; and 4) the injury Plaintiff faces if the relief is not granted outweighs the injury that would be sustained by the Defendant as a result of injunctive relief.

82. The information almost certainly in Irex's possession contains valuable proprietary software programs containing highly confidential, valuable details of Brand's contracts

with customers, including rates, pricing, job site needs and contract execution, which would be of tremendous benefit to Brand competitors and would damage Brand in competitors' hands. *See* Declaration of Jason Fisher, Exhibit C at ¶ 9. The programs additionally have stand-alone, inherent value which would damage Brand by the loss of the competitive advantage they provide.  The information would be incredibly beneficial to Brand's competitors, such as Irex and its related companies, and would irreparably damage Brand's competitive edge if it were in competitor's hands. *See id.*   Irex has threatened to stop the forensic examination of the Stanich-Irex Equipment in which it was participating and cooperating with Brand, has threatened to return the Stanich-Irex Equipment to the Irex organization and repeatedly has expressed its right and ability to do so and to delete all electronically stored information from the Stanich-Irex Equipment, as it considers itself not bound by any contrary obligations.  *See* Exhibit M-2 and associated correspondence.

83. Upon information and belief, the total destruction of the information regarding the actual scope of the misappropriation of Brand's Protected Information and what happened to it is imminent as Irex has repeatedly expressed its intention to delete all of the data contained on the Stanich-Irex equipment.    Moreover, if Irex chooses not to wipe the Stanich-Irex equipment and returns it to Irex to be recirculated into use as indicated, Irex will then have full access to Brand's misappropriated Protected Information to use as it will, to the extent that it has not or is not doing that already.  Brand will suffer irreparable injury if Irex deletes the data contained in the Stanich-Irex equipment.  Without that information, Brand will never know the extent of the misappropriation of its Protected Information and the extent of its damages including loss of the inherent value of the trade

secrets/software it spent considerable time and money developing, lost profits, lost business, loss of competitive advantage, and any unjust enrichment that Irex may gain from the possession of its trade secrets

84. Further, Irex has already demonstrated its willingness, ability, and propensity to exercise independent control over the Stanich-Irex Equipment and remove the Stanich-Irex Equipment from the purview of the Court's Orders and from the reach of Brand to be able to retrieve and protect its information and determine the scope of vulnerability as described herein.

85. Once Brand's confidential, proprietary, and trade secret information is in the hands of its competitors, there would be no adequate remedy at law—particularly given the difficulties Brand will face proving its case if Irex is given the opportunity to permanently alter or destroy the evidence of his transgressions. *See* Exhibit C, Fisher Dec. at ¶7(a)(i).

86. Brand has submitted sworn declarations that set forth summary-judgment type evidence showing to a virtual certainty that Irex has Brand's Protected Information, including trade secrets, on its equipment, and has attached correspondence from Irex counsel to undersigned counsel whereby Irex threatened to misappropriate same by deleting it so that no information will be available to Brand to determine the scope of its injury, or by placing the equipment with the information back into the Irex organization, a competitor, all in violation of the law and court orders. Accordingly, Brand has demonstrated a likelihood that it will prevail on the merits.

87. The harm that Brand would suffer, as explained more fully above, vastly outweighs the harm, if any, that Irex would experience as it already had been honoring the protocols of

the Protective Order, and Brand's requested Order includes the immediate turnover of said devices.

88. Finally, the grant of injunctive relief will not disserve the public interest which is benefited by enforcement of the law and protection of legitimate property, trade secret, and business interests.

89. Brand has not publicized the requested temporary restraining order and seizure.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff Brand requests that judgment be made and entered in its favor and against Irex as follows:

1) An immediate order directed to Irex and anyone acting in concert or participation with it as follows (generally described here but more specifically described in the Proposed Temporary Restraining Order filed herewith):

   a. To preserve all Brand property and all evidence of its use, access, transmission, treatment, disclosure, disposition and concealing activities related to it;

   b. to make subject to forensic analysis the Stanich-Irex Equipment under the same protocol applicable to that Equipment in the above-referenced Protective Order, as modified by the addition of certain terms governing timing and consequences, and to comply with same;

   c. To prohibit any further access to, use, transmission, treatment, disclosure, disposition of Brand property or any cleansing or concealing activities regarding same;

    d.   To restore all Brand property to Brand including by providing to Brand all things where Brand information or vestiges of links or pointers to any Brand property exist, except for the Stanich-Irex Equipment, which is governed as stated above; and

    e.   For expedited discovery.

2)  An award of compensatory damages to Brand in an amount to be proved at the trial on this matter.

3)  An award of exemplary, punitive, or other monetary damages allowed by law or equity.

4)  An award of all costs and attorneys' fees.

5)  Any such other relief as this Court in its judgment deems just and appropriate.

Respectfully submitted,

*/s/ Elvige Cassard*
Merritt B. Chastain, III, TX # 00793491
(*Pro hac vice* application imminent)
Elvige Cassard, LA #19386
Katherine E. Pizzini, LA #34033
Ogletree, Deakins, Nash, Smoak
  & Stewart, P.C.
701 Poydras Street, Suite 3500
New Orleans, LA  70139
Telephone:  504.648.3840
Facsimile:  504.648.3859

Attorneys for Petitioner BRAND
SERVICES, LLC

## <u>CERTIFICATE OF SERVICE</u>

 I hereby certify that the foregoing has been filed via the Court's Electronic Case Filing system.  I further certify that Irex Corporation is being served via commercial courier under the Louisiana Long-Arm statute.  I further certify that Irex's counsel is being served a copy of the foregoing via fax or email.

 This 4th day of November, 2015.


       */s/ Elvige Cassard*_____
       Elvige Cassard


22897428.1

28

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BRAND SERVICES, LLC<br>          Plaintiff, | )<br>)  **Civil Action**<br>)  **File No.**<br>) |
| versus | )<br>)  **Judge** |
| IREX CORPORATION<br>          Defendant. | )<br>)  **Magistrate Judge**<br>) |

## VERIFICATION

I, Jason Fisher, having been duly sworn, do depose and state:

1.

That I am acting in my capacity as Chief Information Officer of Brand Services, LLC and have the authority to represent Brand Services, LLC in this matter;

2.

That I have read the allegations contained in the foregoing Verified Complaint and Application for Temporary Restraining Order, Preliminary Injunction, for Damages, and Request for Expedited Discovery;

3.

That the allegations contained therein are true and correct to the best of my knowledge, information, and belief.

SIGNED this 3 Day of November, 2015.

JASON FISHER

22068136.1